## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 18-60195-Civ-Scola

DOLORES EISENBAND,
Individually and on behalf of all
others similarly situated,

       Plaintiff,

v.

GARCADIA HOLDINGS, LLC d/b/a
NORTHWEST CHRYSLER JEEP DODGE RAM,

       Defendant.

_____/

### DEFENDANT, GARCADIA HOLDINGS, LLC'S
### MOTION TO DISMISS PLAINTIFF'S CLASS ACTION
### COMPLAINT OR, IN THE ALTERNATIVE, MOTION TO STAY

Defendant, Garcadia Holdings, LLC ("Defendant"), hereby files its Motion to Dismiss the Class Action Complaint ("Complaint") filed by the Plaintiff, Dolores Eisenband, individually and on behalf of all others similarly situated ("Plaintiff"), or, in the Alternative, Motion to Stay.  In support thereof, Defendant states as follows:

**I.**     **PRELIMINARY STATEMENT**

Plaintiff's Complaint for violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA" or "Act"), must be dismissed for lack of standing, improper venue, and lack of personal jurisdiction.  If not dismissed, the class action allegations should be stricken as the class definition creates an impermissible fail-safe class.  Alternatively, the action must be stayed.

In her Complaint, Plaintiff claims that Defendant - which owns and operates automobile dealerships in California and Texas, including the subject dealership, Northwest Chrysler Dodge Jeep Ram, located in Houston, Texas (the "Dealership") - violated 47 U.S.C. §227(b) by causing a prerecorded message to be transmitted to her telephone soliciting sales.

CASE NO.: 18-60195-Civ-Scola

[D.E. #1, ¶¶ 30, 53-63].  Plaintiff, however, does not (and cannot) sufficiently allege that she suffered any tangible injury stemming from the alleged violation of the TCPA.  Rather, Plaintiff alleges that she (and other putative class members) suffered "an invasion of her privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion." *Id*. at ¶41. These allegations are insufficient to claim injury and do not create a case or controversy. Accordingly, Plaintiff lacks Article III standing to bring her Complaint, the Court lacks subject-matter jurisdiction, and, thus, the Plaintiff's Complaint must be dismissed.

In addition, the Complaint should be dismissed for lack of personal jurisdiction as Plaintiff's claims do not arise from any activities by Defendant towards Florida and because Defendant does not have sufficient contact with Florida.   In her Complaint, Plaintiff acknowledges that Defendant "is a Delaware limited liability company with its principal place of business located [in] Salt Lake City, [Utah]" and bases her claims upon a prerecorded telephone message allegedly sent to her cellular telephone soliciting sales at the Dealership located in Houston, Texas. *Id*. at ¶¶16, 30.   Plaintiff alleges that Defendant "owns and operates 28 domestic and foreign automobile dealerships in California, Iowa, Texas and Michigan;" Plaintiff does not (and cannot) allege that Defendant owns or operates any such dealerships in Florida.  *Id*. at ¶2.  Notwithstanding that Defendant vehemently denies that it caused the subject prerecorded message to be sent to Plaintiff's telephone, even if it had accidentally done so such isolated, unintentional conduct would be insufficient to establish the minimum contacts necessary for personal jurisdiction.

In that same vein, the Complaint should be dismissed or, alternatively, should be transferred to the United States District Court for the Southern District of Texas (the District in which the Dealership in located) as Florida is not a proper venue. Assuming, *arguendo*, that a class does exist, as the Dealership is not located in Florida the vast majority (if not the entirety) of the putative class members would not be located in Florida but within the vicinity of the Dealership.   Moreover, the Court should strike Plaintiff's class allegations as an improper attempt to allege a "fail-safe class."

Even if, *arguendo*, the Court does not dismiss or transfer the Complaint, the Court should stay this action pending the opinion of the United States District Court for the District of Columbia (the "DC District") in the TCPA case styled *ACA International v. Federal*

**GORDON REES SCULLY MANSUKHANI**
Miami Tower, 100 S.E. Second Street, Suite 3900, Miami, FL 33131

*Communications Commission*, Case No. 15-1211 (the "ACA Matter"), as other federal courts around the country have done.

## II.    <u>BACKGROUND</u>

Plaintiff originally filed a Class Action Complaint against Garff Enterprises, Inc. ("Garff") on November 20, 2017 in the matter styled *Dolores Eisenband v. Garff Enterprises, Inc.*, Case No. 0:17-cv-62274-FAM in the United States District Court for the Southern District of Florida (the "Prior Action"), arising out of the exact same alleged TCPA violation that is asserted in the instant action.  Garff is one of six (6) holding companies under the Ken Garff Automotive Group ("KGAG") umbrella, as is Defendant (the latter of which operates the Dealership).  None of the six (6) holding companies under the KGAG umbrella operates any automobile dealerships in Florida.

In response to the Complaint in the Prior Action, on January 3, 2018 Garff filed its Motion to Dismiss the Class Action Complaint or, in the Alternative, Motion to Stay on the same bases as those set forth herein.  Attached to that Motion, as is attached to the instant Motion, was a Declaration by Michael D. Creer, Vice President and General Counsel of KGAG and each of its holding companies, declaring that Garff does not own or operate any auto dealerships in Florida or otherwise sell any goods or provide any services to consumers in Florida, does not own, use, possess, or have any interest in real property in Florida, does not employee any individuals in Florida, is not registered with the Florida Secretary of State, and does not have a registered agent in Florida.

On January 15, 2018, Plaintiff amended her Complaint in the Prior Action.  On January 29, 2018, the Court in the Prior Action entered its Order dismissing the Prior Action and requiring Plaintiff to initiate a new lawsuit if she intended to proceed against Defendant. On January 30, 2018, Plaintiff filed her Complaint in this Action, which Complaint is identical to the Amended Complaint filed by Plaintiff in the Prior Action.  [D.E. #1].

As she did in the Prior Action, Plaintiff alleges that Defendant violated the TCPA by contacting her with a single "prerecorded" message on September 23, 2017.  *Id.* at ¶30. Plaintiff alleges that she received the call on her cellular telephone at a number with an area code of 954 and ending in 8906. *Id.* The TCPA provides that it is unlawful to make any call using any automatic telephone dialing system ("ATDS") or an artificial or prerecorded voice

to any telephone number assigned to a cellular telephone service unless: (1) it is made for emergency purposes; (2) it is made with the prior express consent of the called party; or (3) unless the call is made to collect a debt owed to or guaranteed by the United States.  47 U.S.C. § 227(b)(1)(B).

Plaintiff alleges that she did not give prior express permission for Defendant to contact her using an ATDS or prerecorded messages. [D.E.#1, ¶39].  Plaintiff acknowledges that Defendant is a Delaware limited liability company with its principal office in Utah.  *Id.* at ¶16.  Plaintiff alleges that Defendant "owns and operates 28 domestic and foreign automobile dealerships in California, Iowa, Texas and Michigan;" Plaintiff does not (and cannot) allege that Defendant owns or operates any such dealerships in <u>Florida</u>.  *Id.* at ¶2.  In fact, Defendant does not own or operate any auto dealerships in Florida or otherwise sell any goods or provide any services to consumers in Florida, does not own, use, possess, or have any interest in real property in Florida, does not employee any individuals in Florida, and is not registered with the Florida Secretary of State.  *See* Declaration of Michael D. Creer ("Creer Decl.") at ¶¶4-6, 8.[1]

Plaintiff seeks an injunction enjoining Defendant from making unsolicited calls in violation of the TCPA and a minimum of $500 for each violation (and to have damages trebled for willful or knowing violations as provided by § 227(b)(3) of the Act). [D.E. #1, ¶58, "Wherefore" clause following ¶63].

## III.   LEGAL STANDARD

### A.   Rule 12(b)(1) – *Spokeo* And Requirements For Article III Standing

Article III of the United States Constitution limits the jurisdiction of the judicial branch to cases and controversies, and "standing to sue" is "a doctrine rooted in the traditional understanding of a case or controversy…and developed in [the] case law to ensure that federal courts do not exceed their authority as it has been traditionally understood." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1546-47 (2016).  To establish standing, Plaintiff "must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Meyers v. Nicolet*

---

[1] *See* Declaration of Michael D. Creer attached as **Exhibit A**.

*Rest. of De Pere, LLC*, 2016 U.S. App. LEXIS 22139, *4 (7th Cir. Wis. Dec. 13, 2016) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).  The injury-in-fact must be "fairly traceable to the challenged conduct of the defendant" and "likely to be redressed by a favorable judicial decision."  *Spokeo*, 136 S. Ct. at 1547.  More than a "bare procedural violation, divorced from any concrete harm" is required to satisfy Article III's injury-in-fact requirement.  *Meyers*, 2016 U.S. App. LEXIS 22139, *6.

"Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right."  *Spokeo*, 136 S. Ct. at 1549.  Injury-in-fact is a constitutional requirement, and "[i]t is settled that Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing."  *Id*. at 1547-48; *Raines v. Byrd*, 521 U.S. 811, 820 n.3 (1997) ("Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing."); *Summers v. Earth Island Inst.*, 555 U.S. 488, 497 (2009) (because the injury-in-fact requirement "is a hard floor of Article III jurisdiction," it "cannot be removed by statute.").  Moreover, the Supreme Court has "always insisted on strict compliance with this jurisdictional standing requirement."  *Id*. at 819.  As the Supreme Court has recently cautioned, "[i]n an era of frequent litigation, class actions, sweeping injunctions with prospective effect, and continuing jurisdiction to enforce judicial remedies, courts must be more careful to insist on the formal rules of standing, not less so."  *Ariz. Christian Sch. Tuition Org. v. Winn*., 563 U.S. 125, 146 (2011).

Plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements and, at the pleading stage, "the plaintiff must 'clearly…allege facts demonstrating' each element."  *Id*. at 1547.  Where a plaintiff fails to establish standing, the court lacks jurisdiction and the case must be dismissed.  *See generally Meyers*, 2016 U.S. App. LEXIS 22139, *3-10.

**B.  Rule 12(b)(2) – Personal Jurisdiction**

When ruling on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(2), the Court must conduct a "two-step inquiry when determining whether the exercise of

personal jurisdiction over a nonresident defendant is proper." *Thomas v. Brown*, 504 F. App'x 845, 847 (11th Cir. 2013) (citing *Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A.*, 421 F.3d 1162, 1166 (11th Cir. 2005)). On a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the initial burden of "alleg[ing] sufficient facts to make out a prima facie case of jurisdiction" over the nonresident defendant. *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1214 (11th Cir. 1999) (per curiam).  If the plaintiff sufficiently alleges a prima facie case of jurisdiction, the defendant may "through affidavits, documents or testimony, [make] a meritorious challenge to personal jurisdiction." *Internet Solutions Corp. v. Marshall*, 557 F.3d 1293, 1295 (11th Cir. 2009) (per curiam). At that point, "the burden shifts to the plaintiff to prove jurisdiction by affidavits, testimony or documents." *Id.*  The Court must make two determinations: whether a defendant's activities satisfy the Florida long-arm statute, and if so, whether the extension of jurisdiction comports with the due process requirements of the Fourteenth Amendment of the United States Constitution. *See Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002).

Florida's long-arm statute authorizes an exercise of personal jurisdiction where a claim arises from a defendant "[c]ommitting a tortious act within this state." Fla. Stat. § 48.193(1)(a)(2).  Assuming that is satisfied, the Court must then consider whether the jurisdiction is maintainable pursuant to the Due Process clause.  Plaintiff has alleged that Defendant is subject to the court's personal jurisdiction because "Defendant markets its services within this district" by way of the single alleged call to the Plaintiff and other calls made "upon information and belief." [D.E. #1, ¶14].  Although Defendant denies that it sent the subject prerecorded message to Plaintiff, for purposes of this Motion, Defendant does not contest that Plaintiff has alleged a tort that may satisfy Florida's long-arm statute.  *See* Creer Decl., ¶11.  The Court must therefore consider whether jurisdiction satisfies due process.

The exercise of personal jurisdiction comports with due process if a non-resident defendant has established "certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, (1945)). A single act may create specific jurisdiction if it demonstrates a "substantial connection" with the forum state, but a defendant

does not consent to jurisdiction "solely as a result of random, fortuitous, or attenuated contacts or of the unilateral activity of another party or a third person." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (citations omitted). Rather, the defendant must engage in additional "purposeful conduct" that shows the intent to serve the market of the forum state. *Asahi Metal Indus. Co., Ltd. v. Superior Court of California, Solano County*, 480 U.S. 102, 109 (1987).

"General personal jurisdiction . . . arises from a defendant's contacts with the forum that are unrelated to the cause of action being litigated." *Consolidated Dev. Corp. v. Sherritt, Inc.,* 216 F.3d 1286, 1292 (11th Cir. Fla. 2000). "The due process requirements for general personal jurisdiction are more stringent than for specific personal jurisdiction, and require a showing of continuous and systematic general business contacts between the defendant and the forum state." *Id.* Plaintiff has not made any allegations suggesting a continuous and systematic general business contact between Defendant and Florida, apparently relying on specific personal jurisdiction.

The Eleventh Circuit has set forth a three-part test to determine whether an exercise of specific personal jurisdiction comports with due process. *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1355 (11th Cir. 2013). Under this test, the Court must examine:

> (1) whether the plaintiff's claims arise out of or relate to at least one of the defendant's contacts with the forum; (2) whether the nonresident defendant purposefully availed himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws; and (3) whether the exercise of personal jurisdiction comports with traditional notions of fair play and substantial justice.'

*Id*. The first inquiry focuses on whether there is a "direct causal relationship between the defendant, the forum, and the litigation." *Id*. at 1355-56 (citation omitted). The second inquiry focuses on whether the defendant's contacts with the state:

> (1) are related to the plaintiff's cause of action; (2) involve some act by which the defendant purposefully availed himself of the privileges of doing business within the forum; and (3) are such that the defendant should reasonably anticipate being haled into court in the forum.

CASE NO.: 18-60195-Civ-Scola

*Id*. at 1357. The third test considers:

> (1) the burden on the defendant; (2) the forum's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; and (4) the judicial system's interest in resolving the dispute.

*Id*. at 1358 (quoting *Licciardello v. Lovelady*, 544 F.3d 1280, 1288 (11th Cir. 2008)).

### C.  **Rule 12(b)(3) – Venue**

Pursuant to Federal Rule of Civil Procedure 12(b)(3), a defendant may challenge the venue of an action. 28 USCS § 1391(b) governs venue more specifically and provides that a civil action may be brought in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3)  if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

As discussed below, neither the first basis (which is dependent on the personal jurisdiction analysis) or the second basis can be established, and the third basis has not been pled.   Even if, *arguendo*, any of those bases applies and venue is correct, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought" pursuant to 28 USCS § 1404(a) when a "substantial part of the events or omissions" could not have occurred in Florida.

### IV.   **ARGUMENT**

Even when viewing the facts in a light most favorable to the non-moving party, the Court should dismiss Plaintiff's Class Action Complaint for lack of standing, improper venue, and lack of personal jurisdiction.  The Class Action Complaint lacks sufficient allegations of concrete harm, making vague and conclusory allegations regarding a single alleged prerecorded message, the sort of *de minimis* harm that is insufficient to satisfy Article III's

standing requirement.  Additionally, Defendant does not have the required contacts with Florida necessary to establish jurisdiction by this Court.  Defendant does not reside in the Southern District of Florida, nor did a substantial part of any of the events giving rise to Plaintiff's Class Action Complaint occur in the Southern District of Florida.  In the alternative, even if the Court has personal jurisdiction over Defendant and venue in this district is proper, this Court should enter a stay pending judicial clarification regarding the ACA Matter.

### A. Plaintiff Has Failed To Sufficiently Allege An Injury-In-Fact Sufficient To Confer Article III Standing.

Many courts have dismissed actions brought for bare statutory violations since the Supreme Court's holding in *Spokeo*, holding that such allegations do not suffice to establish Article III standing.  In *Meyers*, for example, the Seventh Circuit considered *Spokeo's* holdings in the context of an alleged violation of the Fair Credit Reporting Act ("FRCA"). *Meyers*, 2016 U.S. App. LEXIS 22139. The plaintiff claimed that defendant violated the FRCA when it gave him a receipt showing his credit card's full expiration date, but sought only statutory damages (in addition to class certification). *Id*. at *2-3.  The Seventh Circuit concluded, in light of *Spokeo* and other precedent, that plaintiff had not suffered any actual harm because he discovered the violation immediately and nobody else ever saw the non-compliant receipt. *Id*. at 7-9.  Congress had sought to limit FRCA lawsuits to consumers suffering from actual harm, but plaintiff was not such a person and, therefore, lacked standing. *Id*.  Plaintiff here has similarly relied on vague, conclusory allegations of statutory violations, with generic assertions of harm related to "invasion of her privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion."  [D.E. #1, ¶41].  Even if sufficiently particular, these alleged damages are so *de minimis* that they cannot rise to the level of a cognizable injury.

The Supreme Court has held that "[t]here is…a *de minimis* level of imposition with which the Constitution is not concerned."  *Ingraham v. Wright*, 430 U.S. 651, 674 (1977); *see also Skaff v. Meridien N. Am. Beverly Hills, LLC*, 506 F.3d 832, 839-40 (9th Cir. 2007) (*de minimis* injury alleged in complaint was "too trifling of an injury to support constitutional standing").  For example, in *Hernandez v. Path, Inc.*, 2012 U.S. Dist. LEXIS 151035, *1-2

(N.D. Cal. Oct. 19, 2012), the plaintiff alleged that a cell phone application he downloaded had caused "diminished mobile device resources" and the loss of "two to three seconds of battery capacity."  The district court found these allegations of diminished resources were so *de minimis* that they could not establish Article III standing.  The same holds true here. Plaintiff vaguely alleges invasion of privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion resulting from the receipt of *a single alleged call* lasting less than one minute. [D.E. #1, ¶41].  Such "harm" should not be deemed sufficient to invoke the jurisdiction of the federal courts.

Courts have dismissed purported TCPA lawsuits that rely on similarly conclusory and *de minimis* allegations of harm since *Spokeo*. *See Susinno v. Work Out World, Inc.*, No. 15-5881, 2016 U.S. Dist. LEXIS 113664 (D.N.J. 2016), ECF No. 31 (granting motion to dismiss after finding that TCPA plaintiff had not suffered an injury in fact from only one unwanted cell phone call) (as reported by *Sartin v. EKF Diagnostics, Inc.*, No. 16-1816, 2016 U.S. Dist. LEXIS 179155, *10) (E.D. La. Dec. 28, 2016)); *Kostmayer Constr., LLC v. Port Pipe & Tube, Inc.*, No. 2:16-cv-01012, 2016 U.S. Dist. LEXIS 145947 (W.D. La. Oct. 19, 2016) (dismissing TCPA claims where plaintiff alleged statutory violation and made only general reference to the harms contemplated by Congress).  Defendant does not contend that TCPA violations could never cause injury in fact, but merely that a *single alleged call* to Plaintiff is *de minimis.*

In *Susinno*, the putative class plaintiff also alleged receiving only a single call. *Susinno v. Work Out World, Inc.*, 2016 U.S. Dist. LEXIS 113664, *1 (D.N.J. Aug. 1, 2016). The Court noted that a single call could not have a "legal impact" as it would not tie-up the phone line, would not have a tangible impact on battery power, and that "the prevention of annoying and repeated telemarketing calls . . . require that there needs to be some type of pattern or repeatedness to the telephone calls." *Id.* at *23-24.  The Court held that a prerecorded message lasting one minute and two seconds is not "a significant period of time" and constituted an "abstract . . . *de minimis*" harm. *Id.* at 24.

Because Plaintiff has not sufficiently alleged a concrete and particularized injury-in-fact, she lacks Article III standing and the case must be dismissed.

**B.  Plaintiff Cannot Establish Personal Jurisdiction Over Defendant**

Plaintiff has not alleged contacts sufficient to create personal jurisdiction over Defendant in the Southern District of Florida.  Plaintiff's Complaint points to a single alleged call made to her Florida cellular telephone number purportedly from a Delaware limited liability company whose principal office is in Utah and which does no business in Florida or any nearby states.  Accidental contact cannot demonstrate purposeful availment, and the exercise of personal jurisdiction in this matter would not comport with "traditional notions of fair play and substantial justice." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984).

### 1.    Conclusory Allegations of Contact Are Insufficient

As a preliminary matter, aside from the single alleged call to Plaintiff, the Complaint, which acknowledges that Defendant is a Delaware limited liability company with its principal address in Utah and that the Dealership is located in Texas, includes conclusory allegations that other calls were made to individuals within this judicial district, "upon information and belief." [D.E. #1, ¶¶14, 16].  Courts do not "have to take as true . . . allegations 'upon information and belief' . . . without enough facts to make [the] statement plausible." *Mann v. Palmer*, 713 F.3d 1306, 1315 (11th Cir. 2013) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 551, 557 (2007)).  Plaintiff attempts to plead around Garcadia's lack of sufficient contacts with the State of Florida (of which she became aware in the Prior Action) by cursorily alleging that "[d]espite its limited geographic market, Defendant engages in mass telemarketing to consumers throughout the United States, regardless of whether these consumers reside within Defendant's geographic market." [D.E. #1, ¶3].  However, in his Declaration Mr. Creer establishes that Defendant does not own or operate any auto dealerships in Florida or otherwise sell any goods or provide any services to consumers in Florida, does not own, use, possess, or have any interest in real property in Florida, does not employee any individuals in Florida, and is not registered with the Florida Secretary of State. *See* Creer Decl. at ¶¶4-6.  Thus, the burden shifts to Plaintiff "to prove jurisdiction by affidavits, testimony or documents," a burden that she cannot satisfy.  *Internet Solutions Corp. v. Marshall*, 557 F.3d at 1295.

Plaintiff's unsupported and conclusory statements that others were affected in the District and that "Defendant engages in mass telemarketing to consumers throughout the United States, regardless of whether these consumers reside within Defendant's geographic market" are refuted by Mr. Creer's Declaration, in which he establishes that Defendant does not operate in Florida or have any reason to target Florida residents, matters which Plaintiff cannot contest with by affidavits, testimony or documents. *See* Creer Decl., ¶¶4, 5, 7-9, 12. The Court's analysis must, therefore, focus on whether the single message allegedly sent to Plaintiff justifies the exercise of personal jurisdiction over Defendant.

## 2. Defendant's Single Alleged Communication Cannot Constitute Purposeful Availment in Florida

As discussed above, Defendant vehemently denies that it caused the subject prerecorded message to be sent to Plaintiff. *See* Creer Decl., ¶11. Even assuming, for purposes of the instant Motion only, that Defendant did cause that message to be sent to Plaintiff, as Defendant does not conduct any business in Florida (or in any state neighboring Florida) any such contact with Plaintiff in Florida was entirely unintentional as Defendant has no interest in consumers from states where it is does not conduct business, such as Florida. *See* Creer Decl., ¶12. Defendant does not avail itself of Florida's laws and privileges.

The Eleventh Circuit's holding in *Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1251 (11th Cir. Fla. 2000) suggests that even *intentional* telephonic contact, if enough to meet the burdens of Florida's long arm statute, may still be insufficient to meet due process. In *Future Tech.*, the court affirmed dismissal of an action where "the facts of this case include a single telephone call," noting that "the defendant did not reasonably anticipate being haled into a Florida court." *Id*. The Eleventh Circuit has further noted that "[i]t is unlikely that a single contact with the forum state . . . will be sufficient to create jurisdiction." *Rhodes v. Unisys Corp.*, 170 Fed. Appx. 681, 685 (11th Cir. Ala. 2006); *see also Sun Bank, N.A. v. E.F. Hutton & Co.,* 926 F.2d 1030, 1034 (11th Cir. Fla. 1991). Given that the only contact specifically pled was a single prerecorded message sent to Plaintiff, jurisdiction cannot exist.

Plaintiff's Complaint clearly fails to plead any facts other than a single inadvertent call that would suggest that Defendant purposefully availed itself to the laws and privileges of

Florida.  Even if it did so, dismissal would still be appropriate.  *See, e.g.*, *Einmo v. Aecom Gov't Servs.*, 2007 U.S. Dist. LEXIS 63293, *30-31 (M.D. Fla. Aug. 7, 2007) ("[P]lacing an advertisement in the Houston Chronicle; respond[ing] to Plaintiff's email response to the posting; communicat[ing] with Plaintiff during an approximate one-month period by email, cell phone, and facsimile; and telephon[ing] a Florida resident listed as one of Plaintiff's references" were not "intended to occur in Florida."); *Exhibit Icons, LLC v. XP Cos.*, LLC, 609 F. Supp. 2d 1282, 1293 (S.D. Fla. 2009) ("purposeful direction would require that the telephone communications be substantial, <u>and not a single telephone call</u>.").  Such attenuated contacts do not justify personal jurisdiction.

Allegations of a single call not paired with any evidence of availment are insufficient to support a finding of specific personal jurisdiction over Defendant.  Dismissal is therefore warranted.

### 3.    The Exercise of Jurisdiction Runs Contrary to Traditional Notions of Fair Play and Substantial Justice

The Court should further resist finding that it has jurisdiction based upon Defendant's alleged inadvertent contact with Plaintiff as this purported class-action concerns a class focused in Texas   Given the tenuous connection with Plaintiff, it would be manifestly unfair to hale Defendant into court in the Southern District of Florida for a class of overwhelmingly Texas plaintiffs.

In order to determine whether this forum comports with traditional notions of fair play and substantial justice, the court should look at: (a) the burden on the defendant, (b) the forum state's interest in adjudicating the dispute, (c) the plaintiff's interest in obtaining convenient and effective relief, (d) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (e) the shared interest of the several states in furthering fundamental substantive social policies. *Burger King*, 471 U.S. at 466.  These factors weigh in favor of dismissal given the lack of a significant relationship between Defendant and Florida.  Haling a Delaware limited liability company based in Utah that does no business in Florida and had no interest in soliciting consumers there into court there is neither predictable nor fair.  Florida itself has little interest in overseeing a class action which would necessarily be focused on conduct and individuals overwhelming located in other states, most notably Texas.

Jurisdiction in Florida would lead to an inefficient prosecution for Defendant as well as the purported class itself.  Plaintiff's interest in relief from a single alleged call cannot justify jurisdiction when weighed against these factors. *See Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1251 (11th Cir. Fla. 2000) ("[T]his Court cannot conclude a strong state interest in haling people into Florida courts from all over the country for entering into one service arrangement, over the telephone without ever setting foot in Florida.").  The action should, therefore, be dismissed.

### C.  Florida is an Improper Venue for this Putative Class Action

Defendant moves that the Court dismiss the matter for improper venue or transfer it from the Southern District of Florida to the United States District Court for the Southern District of Texas or other judicial district geographically proximate to Defendant's business.

In assessing whether a "substantial part of the events or omissions giving rise to the claim occurred" in a particular district, courts should consider "only those acts and omissions that have a close nexus to the wrong." *Brownsberger v. Gexa Energy, LP*, 2011 U.S. Dist. LEXIS 5214, *14, 2011 WL 197464 (S.D. Fla. Jan. 19, 2011).  For the same reasons addressed in the previous section concerning Defendant's limited contacts with Florida and the locus of the proposed class, a "substantial part of the events or omissions" could not have occurred in Florida.  Plaintiff alleges a proposed class of "thousands." [D.E. #1, ¶45].  The class, if it exists, would logically be centered in the states where Defendant actually does business, mostly notably in Texas (where the Dealership is located].  Florida is not one of those states, nor does it border any of those states.  It is implausible that the single alleged call to Plaintiff could be a "substantial part" of the proposed class action.  As such, venue in the Southern District of Florida is inappropriate, and the matter should be dismissed.

### D.  Even if Florida is a Proper Venue, Transfer is Appropriate

Even if the Court believes that the single alleged call to Plaintiff is a "substantial part" of the action, it should nonetheless dismiss or transfer the action.

To obtain dismissal under the transfer doctrine, a "moving party must demonstrate that (1) an adequate alternative forum is available, (2) the public and private factors weigh in favor of dismissal, and (3) the plaintiff can reinstate his suit in the alternative forum without undue

inconvenience or prejudice." *Leon v. Millon Air, Inc.*, 251 F.3d 1305, 1310-11 (11th Cir.2001). With regard to the public and private factors, a court considers:

> the plaintiff's initial choice of forum; the convenience of the parties; the convenience of the witnesses; the relative ease of access to sources of proof; the availability of compulsory process for witnesses; the location of relevant documents; the financial ability to bear the cost of the change; and trial efficiency.

*Walters v. McMahen*, 2011 U.S. Dist. LEXIS 28506, *11 (M.D. Ala. Mar. 18, 2011).

Here, the United States District Court for the Southern District of Texas, where the Dealership is located, would be more efficient, as it is proximate to the Dealership as well as the geographic region where Defendant conducts the business of the Dealership.  The only factor that would seem to weigh in favor of Plaintiff would be the burden on Plaintiff.  Given that class damages exceed $5,000,000, such a burden is insignificant. [D.E. #1, ¶7]; s*ee also Walters v. McMahen*, 2011 U.S. Dist. LEXIS 28506 (M.D. Ala. Mar. 18, 2011) ("[A] plaintiff's chosen forum is entitled to less deference when the action is one brought on behalf of a class of persons similarly situated.").  This is especially true when it would be inconvenient to the purported class. In light of the foregoing, Defendant requests transfer of venue if the Court does not otherwise dismiss the action.

### E.  Plaintiff's Class Allegations Create an Impermissible Fail-Safe Class

Plaintiff's class allegations should be stricken because they create an impermissible fail-safe class.  A person qualifies as a member of a fail-safe class if the person has a valid claim.  It purports to include only those who are entitled to relief, and is improper because a class member either wins or, by virtue of losing, is defined out of the class and is, therefore, not bound by the judgment. *See Alhassid v. Bank of Am., N.A.*, 307 F.R.D. 684, 694 (S.D. Fla. 2015).  The fail-safe class obtained its label because the class definition precludes the possibility of an adverse judgment against class members; the class members either win or are not in the class.

Plaintiff proposes the following class definition in Paragraph (43) of the Class Action Complaint:

> All persons within the United States who, within the four years prior to the filing of this Complaint, were sent a call using an artificial or prerecorded voice, from Defendant or anyone on

> Defendant's behalf, to said person's cellular telephone number, without emergency purpose and without the recipient's prior express written consent.

Putting aside the inability to satisfy the requirements under Rule 23, Plaintiff's class allegations plead an impermissible fail-safe class that requires individualized merits-based determinations to ascertain class membership.  Plaintiff's class definition is a classic example of a fail-safe class because it includes only those individuals who did not provide express written consent to be contacted and who were contacted via an ATDS or prerecorded voice. Because a lack of consent and use of an ATDS/prerecorded voice is a requirement for liability under the TCPA, Plaintiff's proposed class depends on Defendant's liability and so is an impermissible fail-safe class. Courts across the country routinely grant motions to strike class allegations in TCPA actions alleging fail-safe classes.  *See, e.g., Zarichny v. Complete Payment Recovery Servs*., 80 F. Supp. 3d 610, 625 (E.D. Pa. 2015) (granting motion to dismiss and strike fail-safe class allegations where "the putative TCPA class is comprised of those people who received CPRS telephone calls without the recipient's "prior express consent"); *Espejo v. Santander Consumer USA, Inc.*, 2016 U.S. Dist. LEXIS 142259, at *26-27 (N.D. Ill. Oct. 14, 2016) (holding that plaintiff proposed an impermissible fail-safe TCPA class where membership required "a determination of consent – *i.e.,* whether the called party's number was 'volunteered' or 'verified' before [the defendant] used it"); *Sauter v. CVS Pharmacy, Inc*., 2014 U.S. Dist. LEXIS 63122 (S.D. Ohio May 7, 2015) (reviewing cases addressing whether proposed TCPA classes defined to include individuals who did not provide prior express consent qualified as fail-safe classes and finding that such classes are impermissible); *Leyse v. Lifetime Entm't Servs., LLC*, 2017 U.S. App. LEXIS 2607, *3 (2d Cir. N.Y. Feb. 15, 2017); *Dixon v. Monterey Fin. Servs*., *Inc*., 2016 U.S. Dist. LEXIS 82601 (N.D. Cal. June 24, 2016); *Dixon v. Monterey Fin. Servs., Inc*., 2016 U.S. Dist. LEXIS 111687 (N.D. Cal. Aug. 22, 2016).

### F.   <u>Alternatively, Defendant Requests that the Action Be Stayed</u>

Defendant alternatively moves the Court to enter a stay pending a decision from the D.C. Court of Appeals in *ACA Int'l, et al. v. Fed. Commnc'ns Comm'n*, Case No. 15-1211, 2015 U.S. App. LEXIS 18554 (D.C. Cir. July 13, 2015).   The appeal concerns whether the

statutory term "called party" includes the "intended recipient" of a telephone call, whether a safe harbor exemption is limited to one call, the interpretation of consent revocation, and the definition of an autodialer.  The appeal was argued in October 2016 and a decision will offer guidance as to the validity of certain FCC regulations and rulings, including what constitutes an automated dialer and other possibly relevant factors that could affect the sufficiency of the claim as well as the scope of the purported class.  A stay would prevent possible judicial waste at an extremely early stage of the litigation.

District courts possess "broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706 (1997) (citations omitted).  A stay may be issued where a pending decision in another court could "have a substantial or controlling effect on the claims and issues in the stayed case." *Miccosukee Tribe of Indians of Fla. v. S. Fla. Water Mgmt. Dist.*, 559 F.3d 1191, 1198 (11th Cir. 2009).  When considering a stay, courts look to "(1) whether a stay would unduly prejudice or present a tactical disadvantage to the nonmovant; (2) whether a stay will simplify the issues in the case; and (3) whether discovery is complete and a trial date has been set." *Joseph v. Barclays Bank Del.*, 2016 U.S. Dist. LEXIS 183790, *2 (N.D. Ga. Dec. 12, 2016).

"[N]umerous courts around the country have granted similar motions to stay in TCPA cases while the D.C. Circuit case is pending." *Ankcorn v. Kohl's Corp.*, 2017 U.S. Dist. LEXIS 12149, *8 (N.D. Ill. Jan. 30, 2017) (collecting decisions from various jurisdictions).  Similarly, while there is a split within the Eleventh Circuit district courts, a number have granted similar stays.  *See, e.g., Joseph v. Barclays Bank Del.*, 2016 U.S. Dist. LEXIS 183790, *2 (N.D. Ga. Dec. 12, 2016) (collecting district court cases granting stays).  A stay would result in limited delay given that the case "is still in its infancy and the D.C. Circuit has already heard oral arguments." *Robinson v. Nationstar Mortg., LLC*, 2016 U.S. Dist. LEXIS 147770, *2 (S.D. Ga. Oct. 25, 2016).  A stay would, however, "conserve judicial resources, . . . help clarify the law, and . . . enable this Court to render a sound decision." *Coatney v. Synchrony Bank*, 2016 U.S. Dist. LEXIS 118768, *5 (M.D. Fla. Aug. 2, 2016) (granting a stay in the TCPA context where the claims were based on use of an ATDS).

Given the likelihood of a ruling soon in the ACA Matter, a stay would not be unduly burdensome or prejudicial to the Plaintiff.  This case was recently filed, and no discovery has

CASE NO.: 18-60195-Civ-Scola

been served.  Plaintiff's Class Action Complaint incorporates and references various FCC regulations and rulings that could be affected by this impending decision, including the meaning of ATDS. [D.E. #1, ¶¶20-22, 26-28].  Staying the matter would help both parties evaluate liability and the scope of the purported class.  Defendant, therefore, requests that the Court stay these proceedings pending the decision in the ACA Matter if it does not dismiss Plaintiff's Class Action Complaint, strike the class allegations or transfer this matter.

## V.    CONCLUSION

For the foregoing reasons, Defendant, Garcadia Holdings, LLC, respectfully requests that this Court grant its motion and dismiss Plaintiff's Class Action Complaint in its entirety, or, in the alternative, strike the class allegations and transfer or stay the matter

Respectfully submitted this 21st day of February, 2018.

By:    *s/ Robin Taylor Symons*
**Robin Taylor Symons, Esq.**
Florida Bar No. 356832
rsymons@gordonrees.com
**Eric R. Thompson, Esq.**
Florida Bar No. 888931
ethompson@gordonrees.com
**GORDON & REES**
**SCULLY MANSUKHANI**
100 S.E. Second Street, Suite 3900
Miami, FL  33131
Tel: (305) 428-5300 Fax: (877) 644-6209
*Counsel for Defendant*
*Garcadia Holdings, LLC*

CASE NO.: 18-60195-Civ-Scola

### CERTIFICATE OF SERVICE

I hereby certify that on February 21, 2018 I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to the attorneys identified on the following Service List.

*s/ Eric R. Thompson*

Eric R. Thompson, Esq.

**Service List**

**Manuel S. Hiraldo, Esq.**
mhiraldo@hiraldolaw.com
Hiraldo P.A.
401 E. Las Olas Boulevard
Ft. Lauderdale, Florida 33301
*Attorneys for Plaintiff*

**Andrew J Shamis, Esq.**
ashamis@shamisgentile.com
Shamis & Gentile, P.A.
14 N.E. 1st Avenue, Suite 400
Miami, Florida 33132
*Attorneys for Plaintiff*

**Jeffrey M. Ostrow, Esq.**
ostrow@kolawyers.com
**Scott A. Edelsberg, Esq.**
edelsberg@kolawyers.com
Kopelowitz Ostrow
Ferguson Weiselberg Gilbert
1 W. Las Olas Blvd, Suite 500
Fort Lauderdale, Florida 33301
*Attorneys for Plaintiff*

1150522/36890385v.1